**Philip R. VISSER, Plaintiff–Appellant,**

**v.**

**PACKER ENGINEERING
ASSOCIATES, INC.,
Defendant–Appellee.**

No. 89–2825.

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 1990.

Reargued En Banc Nov. 27, 1990.

Decided Feb. 4, 1991.

Fred Louis, III, Olson, Grabill, Hoffman & Louis, Chicago, Ill., for plaintiff-appellant.

Michael H. King, Kurt H. Feuer, James M. Gecker, Ross & Hardies, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and CUMMINGS, WOOD, Jr., CUDAHY, POSNER, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, and KANNE, Circuit Judges.

POSNER, Circuit Judge.

The Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, is a major source of federal litigation and a growing factor in American labor markets. The question of what a plaintiff in an age discrimination case must show in order to defeat the defendant's motion for summary judgment is fundamental to the administration of the Act, and hence is of large practical importance.

The district judge granted summary judgment to the defendant in this case, so we must construe the facts as favorably to the plaintiff, Philip Visser, as the record will permit. Dr. Kenneth Packer, founder, chief executive officer, and dominant personality of the defendant, Packer Engineering Associates, Inc., a consulting firm, hired Visser in 1981 as an officer of the firm, and soon afterward Visser also became a member of the firm's board of directors. Visser was 57 years old when he was hired. Years later a bitter dispute erupted within the board over Kenneth Packer's conduct. A dissident group of board members, including Visser, believed that Packer was siphoning money from the firm into his pocket and that of another company that he dominated. Visser threatened to bring a stockholder derivative suit against Packer (and eventually carried out his threat). Matters came to a head on October 1, 1987, when an anonymous memorandum that Visser admitted at his deposition having coauthored was circulated to employees of the firm, attacking Packer's leadership. The same day, the board of directors voted Visser and two other dissident members of the board out of office. The dissidents remained employees of the firm for the time being. But two and a half weeks later a group of them quit to form their own competing consulting firm—which they had secretly incorporated while employed by Packer Engineering—and took with them valuable clients. The following day Kenneth Packer summoned Visser, who was not among those who had quit, to Packer's office and asked Visser to pledge his unqualified loyalty to him, Kenneth Packer. Visser refused and instead told Packer that he was unwilling to take

"any further abuse" from him and demanded an apology for previous abuse. Packer fired Visser on the spot, and shortly afterward Visser joined the breakaway firm. Visser was 64 years old when he was fired—nine months short of the full vesting of his Packer Engineering pension. As a result he lost almost two-thirds of his pension benefits.

In the district court, as in this court, Visser's lawyer emphasized the impropriety of Kenneth Packer's conduct under the norms of corporation law. Packer Engineering is a corporation. ' It is not the personal fiefdom of Kenneth Packer. He had no right to ask Visser to pledge personal loyalty to him, as distinct from the firm. Insofar as Packer was siphoning funds from the firm, loyalty to him would have been, on Visser's part, disloyalty to his employer. He was wrongfully fired.

■■■ This may well be if the facts are as just recited, as we must assume they are because the case was decided on summary judgment. But the age discrimination law does not protect an older employee from being fired without good cause. *Shager v. Upjohn Co.*, 913 F.2d 398, 401 (7th Cir. 1990); *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir.1980) (per curiam); cf. *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557 (7th Cir.1987). It protects him from being fired because of his age. If the employer offers a pretext—a phony reason—for why it fired the employee, then the trier of fact is permitted, although not compelled, to infer that the real reason was age. *Shager v. Upjohn Co., supra*, 913 F.2d at 401. This is just the test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), transposed to the age discrimination setting. But there is no indication of pretext here. Packer fired Visser because Visser was disloyal to him. Visser concedes as much. His reply brief says that "Kenneth Packer terminated Visser because Visser was disloyal to *him* not to the corporation or its shareholders" (emphasis in original); "he was fired for his loyalty to the corporation."

■■ Visser does not understand the meaning of "pretext" in the law of discrimination. He says "the accusation of disloyalty was an ill founded pretext, and meant only that Visser opposed illegitimate actions of Kenneth Packer." A pretext, in employment law, is a reason that the employer offers for the action claimed to be discriminatory and that the court disbelieves, allowing an inference that the employer is trying to conceal a discriminatory reason for his action. It is not, as the quotation demonstrates that Visser believes, an unethical reason for action, or a mask for such a reason. *Pollard v. Rea Magnet Co., supra*, 824 F.2d at 559. If Kenneth Packer really fired Visser because Visser protested against Packer's highhanded behavior, or because Visser was a whistleblower, or because Visser's primary loyalty was, as it should have been, to Packer Engineering rather than to the person of Kenneth Packer (these are closely related points, of course), this may show that Packer is a bad man. It does not show or even tend to show that Visser was fired because of his age. It tends if anything to show the opposite, because if Visser was fired because of his disloyalty to Packer the natural though not inevitable inference is that he was not fired because of his age. Certainly his age had nothing to do with the direction of his loyalties.

But we must consider the possibility that there was more than one reason for Visser's discharge. After all, he was within months of the full vesting of his pension. One reason for firing an older employee might be to economize on the employer's pension costs. This is a shortsighted strategy, because it creates ill will among employees and forces the employer to pay new employees more in order to compensate them for the risk of falling victim to the strategy, and because it invites a lawsuit under the federal pension statute, which forbids an employer to discharge a participant in a pension plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." Employee Retirement Income Security Act, § 510, 29 U.S.C. § 1140; *Ingersoll–Rand Co. v.*

*McClendon,* —— U.S. ——, 111 S.Ct. 478, 485, 112 L.Ed.2d 474 (1990); *Reichman v. Bonsignore, Brignati & Mazzotta P.C.,* 818 F.2d 278 (2d Cir.1987); *Dister v. Continental Group, Inc.,* 859 F.2d 1108 (2d Cir. 1988). But not all firms take the long view and carefully skirt all potential legal pitfalls, so we cannot assume that a firm would never fire an older worker just to pare labor costs a bit.

 Granted, the mere existence of mixed motives—one permissible, one forbidden—is not enough to establish liability. The forbidden motive, age in this case, must be a sufficient condition, or but-for cause, of the employee's termination. *Holzman v. Jaymar–Ruby, Inc.,* 916 F.2d 1298, 1304 (7th Cir.1990); *Oxman v. WLS–TV,* 846 F.2d 448, 452 (7th Cir.1988); *Chappell v. GTE Products Corp.,* 803 F.2d 261, 265 (6th Cir.1986). For there is no tort, common law or statutory, without injury, *Bachman v. St. Monica's Congregation,* 902 F.2d 1259, 1263 (7th Cir.1990); and if the employee would have been fired anyway then he was not injured by the discrimination, and so he has no claim. However, once the plaintiff in a civil rights case has shown that a forbidden purpose was a substantial factor in the decision to fire him, the burden shifts to the employer to persuade the court that the plaintiff would have been fired anyway, even if that purpose had not existed. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). That was a Title VII case but its reasoning is equally applicable, and its rule has been extended, to age discrimination cases. *Burns v. Gadsden State Community College,* 908 F.2d 1512, 1517–18 (11th Cir.1990) (per curiam); *Grant v. Hazelett Strip–Casting Corp.,* 880 F.2d 1564, 1568–69 (2d Cir.1989).

So we must consider whether Visser's age may have been a substantial factor, along with his disloyalty to Kenneth Packer, in Packer's decision to fire him. There is not an iota of evidence that Visser's age per se was a substantial, or any, factor in this decision—no evidence for example that Packer is contemptuous of the ability of 64–year-olds. (Packer himself was 63 when he fired Visser, though he might of course exempt himself from infirmities that he believed afflict the rest of his age group.) But maybe Packer saw an opportunity to economize on pension expense. It is true that, for this to matter, the age discrimination law must make concern with pension expense an invidious ground for firing an employee. Age and pension expense are correlated, though they are not the same thing. There is an analytical difference, certainly, between firing a person on the basis of a stereotyped view of older workers' energy, flexibility, initiative, and other employment attributes, and firing him to save money. Nevertheless a number of cases hold that it is age discrimination to replace an older employee with a younger one for the sole purpose of economizing on salary costs. E.g., *Metz v. Transit Mix, Inc.,* 828 F.2d 1202 (7th Cir. 1987); *Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1157–58 (7th Cir.1989); *White v. Westinghouse Electric Co.,* 862 F.2d 56, 62 (3d Cir.1988). But these cases have no application here, because there is no evidence that the opportunity to shave off two-thirds of Visser's pension benefits influenced Packer's decision to fire Visser in the slightest. The proverbial "smoking gun" is not required, but there is no circumstantial evidence, either, that pension costs played a role in the decision to fire Visser. Packer did not mention such costs. And the timing of the firing is not suspicious. Its occurrence on October 20 was precipitated by the events of October 1 and October 19 rather than by the looming date of full vesting of Visser's pension. It is true that as chief executive officer and a former trustee of the pension fund Packer almost certainly knew that Visser was near to full vesting; and so we shall assume. But a trier of fact may not infer action from knowledge alone. Otherwise every worker who lost his job within months, or perhaps years, before the full vesting of his pension would have a prima facie case of age discrimination. Visser's age, the fact that he incurred a loss of pension benefits when he was fired, the fact that he was replaced by a much younger man, the fact that he may have been fired for an

unethical reason unrelated to his age—none of these facts is evidence of age discrimination. The first three merely place Visser within the protected class and establish injury, and the last is evidence *against* age discrimination. The only evidence *of* age discrimination is—what we have just said is not enough—Packer's knowledge of Visser's age and pension rights.

■■■ Except for the affidavits. Three of the other dissident employees of Packer Engineering filed affidavits in the district court which state that Packer fired Visser because of his age. The self-serving character of such affidavits requires no comment. But that is not in itself a ground for refusing to consider them. Nor the fact that the affidavits use almost identical words and obviously were drafted by a lawyer. Nor that the bulk of each affidavit is given over to arguing that Kenneth Packer is indeed a vengeful, vindictive man and Visser an angel. The proper ground for excluding the affidavits is that witnesses who are not expert witnesses—and these affiants were not—are permitted to testify only from their personal knowledge. Fed.R.Evid. 602; *United States v. Giovannetti*, 919 F.2d 1223, 1226 (7th Cir.1990). Testimony about matters outside their personal knowledge is not admissible, and if not admissible at trial neither is it admissible in an affidavit used to support or resist the grant of summary judgment. Fed.R.Civ.P. 56(e). In fact Rule 56(e) incorporates evidence rule 602 in words as well as by reference, by stating that "supporting and opposing affidavits shall be made on personal knowledge." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir.1989). It is true that "personal knowledge" includes inferences—all knowledge is inferential—and therefore opinions. *United States v. Giovannetti, supra*, 919 F.2d at 1226. But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience. *Palucki v. Sears, Roebuck & Co., supra*, 879 F.2d at 1572; *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir.1987).

The affiants say Packer knew Visser's pension situation. So far, so good. They were high-level employees of Packer Engineering. They worked closely with Packer. They should have known the extent of his knowledge concerning personnel matters at their level. But the affidavits go on to state, largely in the identical words, that Packer's motive in firing Visser, in part anyway, was to deprive Visser of his pension rights. Here is how one of the affidavits puts it: "When the three former board members resigned from Packer Engineering, Kenneth Packer needed to hurt someone immediately. That reaction has frequently been observed by affiant. He [Packer] couldn't immediately hurt the departed so he chose to hurt Visser by depriving him of his cherished goal of a full pension. Kenneth Packer knew Visser's age, knew exactly what he was doing and acted consistent with his pattern of activity in years past. Visser's age was a significant factor in the decision." This part of the affidavits is amateur psychoanalysis. The affiants do not report admissions by Packer about his motives in firing Visser. They do not report primary facts from which a reasonable person in their position would infer that one of Packer's motives was to deprive Visser of most of his pension. They construct a psychological model of Packer and deduce from it that he *must* have wanted to do Visser out of a pension. He was that kind of guy. This is the kind of argumentation one expects in a closing argument. It is doubtful that a psychiatrist or psychologist would be allowed to offer it as expert testimony—it comes awfully close to arguing bad conduct from bad character, contrary to Fed.R.Evid. 404(a). It certainly exceeds the competence of a lay witness.

Discrimination law would be unmanageable if disgruntled employees—the friends of the plaintiff and often people in the same legal position as the plaintiff—could defeat summary judgment by affidavits speculating about the defendant's motives. There would be no summary judgments in age discrimination cases. It is one thing for fellow employees to testify in a civil

rights case to racial slurs or acts of racial discrimination against them by the employer. Such testimony is admissible, subject to limitations designed to prevent the trial from fragmenting into a series of trials of the violations testified to by the witnesses. *Shager v. Upjohn Co., supra*, 913 F.2d at 402–03. It is admissible because it is based on observation and other grounds of personal knowledge. That is not the character of the evidence here. The evidence here is speculation about the defendant's motives in dealing not with the witnesses but with the plaintiff. The affiants are a self-appointed biased tribunal to sit in judgment on Kenneth Packer's motives. The admissible part of the affidavits is limited to the assertion that Kenneth Packer knew what Visser's pension status was. We assume he did know. That is not enough to establish a prima facie case of age discrimination. There is no other evidence.

Since there was no evidence that age or pension costs played a substantial, or indeed any, factor in the firing of Visser, the district judge was right to grant summary judgment. We need not consider in what circumstances it is proper to grant summary judgment in favor of a party having the burden of persuasion. Certainly there are such cases. *Anderson v. Department of Health & Human Services*, 907 F.2d 936, 947–48 (10th Cir.1990); *Crawford v. La Boucherie Bernard Ltd.*, 815 F.2d 117, 122–23 (D.C.Cir.1987); *Marsden v. Patane*, 380 F.2d 489, 492 (5th Cir.1967). This might have turned into such a case if we had concluded that the plaintiff, by showing that age was a substantial factor in his termination, had succeeded in placing on the defendant the burden of persuading the trier of fact that the plaintiff would have been fired regardless. For the plaintiff has done such a good job in his brief and deposition and affidavits of painting Kenneth Packer as a monster of vengefulness as to leave little room for conjecture that Packer would have retained this "disloyal" employee even if he had been a stripling of 29, the age of his replacement. But this we need not decide. Before Visser could shift the burden of persuasion on causation to the defendant he had to show that a reasonable jury could find that age, or (we are assuming) a factor correlated with age, such as concern with the expense of a pension, was a substantial factor in Kenneth Packer's decision to fire Visser. He failed to show this.

Caution is required in granting summary judgment, especially under a statute that allows for trial by jury, as the age discrimination law does. But if no rational jury could, on the evidence presented in the summary judgment proceeding, bring in a verdict for the party opposing summary judgment—if in other words the movant would be entitled to judgment notwithstanding the verdict if the case did go to trial before a jury and he lost—then summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Palucki v. Sears, Roebuck & Co., supra*, 879 F.2d at 1570. We are persuaded that this is such a case.

AFFIRMED.

FLAUM, Circuit Judge, with whom BAUER, Chief Judge, and CUDAHY, Circuit Judge, join, dissenting.

The majority concludes that "there was no evidence that age or pension costs played a substantial, or indeed any, factor" in Kenneth Packer's decision to fire Philip Visser. *Ante* at 660. Because I disagree with this view of the facts before us, and with the substantive law and procedural standards this view of Visser's case leads the majority to apply, I respectfully dissent.

Unlike those who bring suit under other employment discrimination statutes, age discrimination plaintiffs enjoy the right "to a trial by jury of any issue of fact" pertinent to the statutory violation they allege. 29 U.S.C. § 626(c)(2). While we apply the substantive law developed under Title VII in ADEA cases, *see, e.g., Overgard v. Cambridge Book Co.*, 858 F.2d 371, 375 (7th Cir.1988), the application of that body of law is unmistakably influenced by the difference in the parties' litigation strategy created by the availability of a jury trial in ADEA cases, but not Title VII cases. Put

simply, employers and their counsel may well conclude that ADEA cases are won or lost on summary judgment, because jurors find it difficult to close their hearts to the plight of the terminated older employee but easy to open the purse strings of his employer.

The focus of ADEA defendants and their plaintiff employees on the summary judgment stage of an age discrimination case coexists uncomfortably with the elaborate burden-shifting methodologies developed in Title VII cases. In those cases that reach juries, district judges "have the unenviable task" of formulating jury instructions that capture the burden-shifting approach. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 1813, 104 L.Ed.2d 268 (Kennedy, J., dissenting). The difficulty judges have in formulating these instructions and jurors have in applying them can be seen in the fact that jury verdicts in ADEA cases are supplanted by judgments nowtwithstanding the verdict or reversed on appeal more frequently than jury verdicts generally. *Note, The Age Discrimination in Employment Act of 1967 and Trial by Jury: Proposals for Change*, 73 Va.L.Rev. 606, 601 & nn. 14–15 (1987).

In deciding a motion for summary judgment in an employment discrimination case, a district court judge " 'must consider both the substantive law of employment discrimination and burdens of proof under this law.' " *Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 424 (7th Cir.1989) (quoting *Williams v. Williams Elecs.*, 856 F.2d 920, 922 (7th Cir.1988)). But unlike the jury, the district court judge must apply the intricate body of substantive employment discrimination law while at the same time complying with the dictates of Rule 56(c), which include "view[ing] the record and all inferences drawn therefrom in the light most favorable to the party opposing the motion." *Weihaupt*, 874 F.2d at 424.

Being true to both the substantive law and the procedural requirements is particularly difficult in cases in which the age discrimination plaintiff presents direct evidence that his or her age was only one of the factors that "played a motivating part in an employment decision." *Price Waterhouse*, 109 S.Ct. at 1787 (plurality opinion). In these cases, once the plaintiff establishes that the allegedly unlawful employment decision was motivated in substantial part by the illegitimate consideration of age, "the burden shifts to the employer to prove that it would have made the same decision absent the discriminatory motive." *Jones v. Jones Bros. Const. Corp.*, 879 F.2d 295, 299 (7th Cir.1989).

As Justice Kennedy observed in his *Price Waterhouse* dissent, formulating a jury instruction that explains the burden shifting analysis applicable to mixed motives cases in the wake of that decision is no mean feat. 109 S.Ct. at 1813. Neither is articulating what a district court judge is supposed to do in deciding whether to grant summary judgment to an employer in a mixed motives age discrimination case. As I see it, this decision has two elements: first, the district court must decide whether the ADEA plaintiff has demonstrated the existence of mixed motives and second, whether once the employee has established the existence of mixed motives, it is appropriate to conclude that no reasonable juror could find that the illegitimate motive was not a but-for cause of the allegedly unlawful employment action.

The first question is the easier of the two. To establish a mixed motives case, an ADEA plaintiff "must produce evidence sufficient to show that an illegitimate criterion was a substantial factor in the particular employment decision such that a reasonable fact-finder could draw an inference that the decision was made 'because of' the plaintiff's protected status." *Price Waterhouse*, 109 S.Ct. at 1805 (O'Connor, J., concurring). If an employer seeks summary judgment on the ground that no reasonable juror could conclude that the direct evidence the ADEA plaintiff has introduced meets this standard, the district court should approach this question mindful of the standard Rule 56(c) establishes. It should " 'view the record and all inferences drawn therefrom in the light most favorable to the party opposing the motion,' " *FDIC v. Nanula*, 898 F.2d 545, 548 (7th

Cir.1990) (quoting *Beard v. Whitley County REMC*, 840 F.2d 405, 409–10 (7th Cir. 1988)), and deny the motion unless the evidence "is so one-sided that one party must prevail as a matter or law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

Once a district court concludes that an ADEA plaintiff has presented sufficient direct evidence of mixed motives to survive summary judgment, it moves on to the more difficult second step of the *Price Waterhouse* analysis, the question of whether an employer has satisfied its burden of "proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's [age] into account." *Price Waterhouse*, 109 S.Ct. at 1795 (plurality opinion); *see id.* at 1798–99 (O'Connor, J., concurring) (once "an individual disparate treatment plaintiff has shown by a preponderance of evidence that an illegitimate criterion was a *substantial* factor in an adverse employment decision ... the employer may be required to convince the factfinder that, despite the smoke, there is no fire."); *Randle v. LaSalle Telecommunications*, 876 F.2d 563, 569 (7th Cir.1989). The majority is right to observe, *ante* at 660, that summary judgment in favor of a party which bears the burden of proof on an issue is not unheard of. I recognize that there will be cases in which, despite evidence that an illegitimate motive played a substantial part in an employment decision, the ADEA defendant would have made the same employment decision but for the illegitimate motive. These cases, however, will be rare. As the Eleventh Circuit recently observed,

> At the summary judgment stage, an employer can prevail on this issue only if the record evidence that its employment decision was not based on discrimination is so strong that a reasonable trier of fact must so conclude; in other words, there must be no genuine issue of material fact but that the employer would

have made the same employment decision even absent the discriminatory motive.

*Burns v. Gadsden State Community College*, 908 F.2d 1512, 1519 (11th Cir.1990) *(per curiam )*. To be sure, in some cases the legitimate motive will be so compelling a cause for dismissal that even ample direct evidence of age-related discrimination will be insufficient to allow the employee to survive an employer's motion for summary judgment.[1] However, just as age discrimination cases rarely present the trier of fact with "a smoking gun," *Holzman v. Jaymar–Ruby*, 916 F.2d 1298, 1303 (7th Cir. 1990), they rarely present district courts with evidence that points inescapably to the conclusion that there is no question of material fact concerning the role age played in an employer's decision to terminate an older employee.

I am compelled to disagree with the majority's conclusion that this is one of those rare cases. While the district court held that plaintiff Philip Visser had established that there was a genuine factual dispute as to whether age was a substantial in Kenneth Packer's decision to terminate him, the majority seems reluctant to go even this far, at first discussing Visser's claim under the burden-shifting standard set out in non-mixed motive cases such as *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), then acknowledging "the possibility that there was more than one reason for Visser's discharge." *Ante* at 658. Under either standard, summary judgment here is inappropriate. First, I turn to the question of whether Visser established a prima facie case of employment discrimination under the standard set out in *McDonnell Douglas* and raised issues of material fact sufficient to preclude summary judgment on the question of whether the proffered reason for his dismissal was pretextual. Visser was 64 when he was fired a few months before his pension benefits would vest. As

---

1. Even in these cases, however, the employee may survive a summary judgment motion; for example, where she can point to co-workers outside the protected class who have been treat-

ed less severely for the same or similar conduct. *See Nichols v. Acme Markets*, 712 F.Supp. 488, 494 (E.D.Pa.1989).

three of his co-workers affirmed, Kenneth Packer knew that firing Visser would save the company he founded and managed the not inconsiderable expense of paying the better part of Visser's pension, a factor this court has in the past considered in assessing the strength of an ADEA claim.[2] *See Metz v. Transit Mix*, 828 F.2d 1202, 1208 (7th Cir.1987). Visser was replaced by a worker too young to be included in the class of those protected by ADEA, *see* 29 U.S.C. § 631(a), something other courts have looked to in determining whether an ADEA plaintiff has established that the illegitimate consideration of age played a part in a termination decision. *See Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 764–65 (3d Cir.1989); *Rocha v. Great American Ins. Co.*, 850 F.2d 1095, 1101 (6th Cir.1988); *cf. Oxman v. WLS–TV*, 846 F.2d 448, 455 (7th Cir.1988) (one element of prima facie age discrimination case in reduction-in-force context is whether "others not in the protected class were treated more favorably"). I regard this evidence, taken together and examined as befits the procedural posture of this case, to be sufficient to establish a prima facie case of employment discrimination.

Likewise, the direct evidence Visser introduced, including the statements in the affidavits and other evidence that Packer's concerns about Visser's loyalty were less than completely genuine, create an issue of material fact as to whether age played a substantial part in Visser's termination, bringing this case—at least at the summary judgment stage—within the ambit of *Price Waterhouse*. Indeed, the district judge so concluded. Where the district court erred, in my view, was in its application of the second half of the *Price Waterhouse* test, the question of whether Packer would have fired Visser but for his illegitimate concerns with Visser's age and the pension benefits he would accrue if he continued in Packer's employ. The majority concludes that Visser was fired for disloyalty to the irascible person of Kenneth Packer, a motive that, if only in the context of an ADEA suit, is legitimate. Certainly there was disloyalty to Packer among his company's employees, and certainly Visser had identified himself among those who were critical of Packer's management of the company. But there is room for doubt that, but for the sweet—and in the event, transitory—revenge Packer could exact by denying Visser pension benefits, he would have found Visser's disloyalty a sufficient cause for termination. One piece of evidence that speaks to this point that the majority ignores is the letter Packer sent Visser a few weeks after he fired him. The letter refers to an earlier lunch meeting between Packer and Visser at which the two had discussed, at Packer's instigation, Visser's "possible continuing association with Packer Engineering." Despite what Packer refers to as the risk that Visser's return would cause "a divisive influence" within the company he had founded, he closes the letter by renewing his interest in "possible continuing association" between Visser and Packer, albeit an association in which Visser would forego some of his past salary and pension benefits. A reasonable jury reading this letter might well have concluded that Packer's emphatic protestations about Visser's disloyalty were at best short-lived and at worst disingenuous.

This conclusion is supported by another telling fact concerning the relationship between Visser and Packer the majority undervalues, namely the fact that, with every opportunity to rid himself of Kenneth Packer by joining the breakaway company some of his fellow dissidents had formed, Visser nonetheless sought to attempt to reconcile

---

2. The majority disparages these affidavits because their ultimate conclusion lies outside the personal knowledge of the affiants. This ignores other information contained in the affidavits as to which the three affiants did have personal knowledge. Specifically, the affidavits raised factual questions about the extent of Visser's role in the conflicts between Kenneth Packer and others that roiled Packer Engineering in

the period shortly before Visser's termination. This information casts doubt on the sincerity of Kenneth Packer's concerns about Visser's loyalty. Even more helpful to Visser are the affiants' statements that Visser predicted over three months before he was fired that Kenneth Packer would find some way to deprive Visser of his pension benefits.

his differences with Packer. It was this attempt that led him to Packer's office the morning he was fired by Packer rather than to new employment with his former co-workers. Again, Visser's willingness to give his relationship with Packer one last try might have impressed a jury that Packer's proffered reason for terminating Visser, disloyalty, was a thin veneer concealing something else, perhaps the desire to economize on pension expenses while pushing an occasionally problematic older employee out the door. Because of the majority's disposition of this case, we will never know.

BAUER, Chief Judge, dissenting.

I join Judge Flaum's dissent. I confess, however, that I found great merit in the majority opinion. My dissent is really occasioned by my conviction that summary judgment is too rapid a disposition in this case, that sufficient factual questions remain that belong to a jury. And when these factual questions unfold in the trial setting there always remains a right in the court to correct or prevent a verdict that is founded, not on the law and facts, but on sympathy and prejudice. I think we have denied the plaintiff in this case a basic right of all mankind: the right to rise at least to the height of failing.

CUDAHY, Circuit Judge, dissenting.

I join fully in Judge Flaum's persuasive dissenting opinion. We should be exceedingly cautious in holding that the irascible temperament and apparently unwarranted demands for "loyalty" of a corporate executive may insulate his corporation against age discrimination charges otherise supported by probative circumstantial evidence[1] (and employee affidavits).

A mean personality should not provide an impregnable shield against claims that are objectively plausible. Apparently Packer would be easier to convict of age

discrimination if he were a kindly and forgiving soul with a short memory.

I respectfully dissent.

---

1. Incidentally, one may get into mixed motive analysis by presenting either direct *or* circumstantial evidence. *Cf. Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 1801–06, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring) (limiting plurality's new burden-shifting rule in mixed motive context to situations in which plaintiff presents direct evidence of discrimination).