951 F.2d 352
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Kenneth E. NELSON, Plaintiff-Appellant
v.
KENNICOTT BROTHERS COMPANY, Defendant-Appellee.
 No. 91-1254.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 6, 1991.
Decided Dec. 19, 1991.
 
 Before CUDAHY and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 BACKGROUND
 
 1
 Kenneth Nelson sold his Milwaukee-based wholesale florist business to Kennicott Brothers Company of Chicago in February, 1976. As part of the transaction, the parties contractually agreed that Nelson would stay on in Milwaukee as a Kennicott employee for ten years following the sale. At first Nelson managed the Milwaukee store. In 1979, however, Kennicott demoted Nelson to the position of cut-flower salesman due to what was deemed to be his poor performance as manager. Nelson nevertheless retained his previous wage after the demotion.
 
 
 2
 The Milwaukee floral business failed to blossom as Kennicott had hoped. In fiscal 1984 the Milwaukee store lost approximately $140,000; the following year brought an additional loss of $147,000. New managers came and went in Milwaukee, apparently having little success.
 
 
 3
 Jim Schilz, a cut-flower salesman in the Milwaukee store since 1981, took the helm as manager in 1985. In an effort to turn the tide at the Milwaukee operation, Schilz advised Chicago that he believed a much more aggressive approach to sales was essential. One of Schilz's recommendations was that certain "poor performers" should be terminated; Kenneth Nelson's name made the list. Red Kennicott, the owner of the company, agreed with Schilz's assessment and gave Nelson the news.
 
 
 4
 Nelson believes the real reason he was fired was not his poor performance, but rather that Kennicott was biased against older workers. He filed suit against Kennicott alleging violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (ADEA) and sought to prove discrimination using a "disparate treatment" analysis. Nelson was 62 years of age when asked to leave Kennicott's employ in 1986, and thus was a member of the protected class under the ADEA.
 
 
 5
 Also before the district court was Nelson's pendent contract claim, which maintained that his 1976 contract selling the business to Kennicott promised him at least ten years of employment and continued employment as long as he rendered reasonably acceptable service and business conditions warranted. Kennicott countered that ten years of employment was indeed agreed to, but the promised decade had expired. The specific terms of the contract for sale provided no expectation of employment beyond that. Even if it did, Kennicott responded, Nelson's performance was unsatisfactory, and the company thus had an unrefuted, reasonable and non-discriminatory reasons to fire him.
 
 
 6
 We review the district court's grant of summary judgment in favor of Kennicott on both the ADEA and the pendant contract claims.
 
 ANALYSIS
 
 7
 This court reviews the district court's grant of summary judgment de novo. Billups v. Methodist Hospital of Chicago, 922 F.2d 1300, 1302 (7th Cir.1991). The question of what a plaintiff in an age discrimination case must show in order to defeat the defendant's motion for summary judgment has been recently addressed by this court in Visser v. Packer Engineering Associates, Inc., 924 F.2d 655, 656 (7th Cir.1991) (en banc ). In any appeal of summary judgment, we must construe the facts as favorably to the plaintiff as the record will permit; this standard applies equally to cases involving age discrimination. Visser at 656.
 
 
 8
 A court should use caution when in granting summary judgment, especially under a statute which allows trial by jury, as the age discrimination law does. Visser at 660. But if no rational jury could bring in a verdict for party opposing summary judgment on the evidence presented in the summary judgment motion, then summary judgment must be granted. Visser at 660. Thus, Nelson, at a minimum, must be able to establish a prima facie case in order to withstand a motion for summary judgment. Guilty v. Village of Oak Park, 919 F.2d 1247, 1250 (quoting Morgan v. Harris Trust & Savings Bank, 867 F.2d 1023, 1027-28 (7th Cir.1989); see also Fitzpatrick v. Catholic Bishop, 916 F.2d 1254, 1256 (7th Cir.1990) ("The days are gone, if they ever existed, when the non-moving party could sit back and simply poke holes in the moving party's summary judgment motion.") (quoted in Guilty at 1250).
 
 
 9
 Establishing a prima facie case requires that Nelson show evidence, either directly or indirectly, that age discrimination motivated the adverse employment decision. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981), Smith v. General Scanning, Inc., 876 F.2d 1315, 1318, (7th Cir.1989); Oxman v. WLS-TV, 846 F.2d 448, 452 (7th Cir.1988).
 
 
 10
 In reviewing an age discrimination case, we must decide "whether there was sufficient evidence for a reasonable jury to find that age was a determining factor," or "in other words, a 'but for' cause" of the employer's decision to fire the plaintiff. Brown v. M & M Mars, 883 F.2d 505, 507 (7th Cir.1989), cited in Aungst v. Westinghouse Electric Corp., 937 F.2d 1216, 1219 (7th Cir.1991). "[A] terminated plaintiff's ultimate burden in an age discrimination case is to prove that he was discharged because of his age." Oxman at 452.
 
 
 11
 Since Nelson has provided no direct evidence of discrimination, we review his indirect proof to evaluate whether a prima facie case has been established. Metz v. Transit Mix, Inc., 828 F.2d 1202 (7th Cir.1987); Dale v. Chicago Tribune Co., 797 F.2d 458 (7th Cir.1986), cert. denied, 479 U.S. 1066.
 
 
 12
 Nelson must show the following things: (1) that he belongs to the protected class; (2) that his job performance met or exceeded his employer's legitimate expectations; (3) that he was discharged and (4) that Kennicott sought a replacement for him or, if Kennicott was reducing its work force for economic reasons, that other employees that were not in the protected class were treated more favorably than he was.
 
 
 13
 The district questioned whether Nelson had provided adequate evidence to withstand the fourth necessary element: that his employer replaced him, or, if Kennicott was reducing the size of its operation, that another worker actually took over his position. After he was asked to leave Kennicott Brothers, Nelson's work was divided among the remaining employees having similar positions.
 
 
 14
 In Oxman, this court held that, in reduction-in-force cases, the fourth element merely requires the plaintiff to show that "others not in the protected class were treated more favorably that plaintiff", Jardien v. Winston Network, Inc., 888 F.2d 1151, 1154 (7th Cir.1989) (citing Oxman at 455-56). There was evidence that Jim Schilz recommended the firing of two "poor performers" not in the protected class: Dan Tamburrino (age 25) and Joseph Morinelli (age 26). Under Oxman, however, an age discrimination claim may not be defeated on summary judgment by a mere showing that some employees in the protected class were fired.
 
 
 15
 Schilz also apparently recommended the termination of another employee, Robert Frances. Frances was 46, and thus under ADEA's purview. Nelson argues, in essence, that since he had a higher sales volume than Frances, that Frances should have been let go prior to him. There is no evidence that Kennicott accepted or rejected Schilz's recommendation to fire Frances; he resigned voluntarily to accept other employment prior to a final decision regarding his termination, albeit four months after Nelson was terminated. No evidence of sales volume apparently exists for the two younger workers who were fired.
 
 
 16
 Kennicott asserts that Nelson was the most unprofitable salesperson in Milwaukee, with profitability figured by Nelson's gross sales and corresponding salary. Profitability determinations and subsequent decisions to discharge older workers based upon formulas such as "sales to salary ratios" are not, in and of themselves, discriminatory. Terminations where salary is related to seniority or age to such a degree that the plaintiff's salary or "profitability" becomes a "proxy" for age, however, are forbidden under the analysis of Metz v. Transit Mix, 828 F.2d 1201 (7th Cir.1987). See also Visser v. Packer Engineering Associates, Inc. at 658.
 
 
 17
 The district court found that "... plaintiff's age and his salary are not strongly correlated and indeed are almost unrelated." District Court Memorandum and Order at Page 8. Nelson never received a raise after 1981 because of [Mr. Kennicott's] various dissatisfactions with his performance." Id at 9. Nelson began his employment at Kennicott after he sold the business; he received a higher salary due to the fact he was the manager of the Milwaukee operation he previously owned. Other salesmen, whether they were in the protected class or not, apparently received increases in pay. Pay increases were apparently performance, not age or seniority related.
 
 
 18
 Although Nelson has provided some evidence that others younger than he were treated more favorably than he was (at least some younger workers other than Dan Tamburrino and Joseph Morinelli were not fired) he has provided no evidence that shows that his salary or his "profitability" might be a proxy for his age. Even if it could be established that Nelson alleged a prima facie case of age discrimination (which we do not believe he has) Kennicott has certainly articulated a legitimate non-discriminatory reason for firing him. Nelson has not proven that the reasons offered by Kennicott for his termination were pretextual in nature. Other than Nelson's rather superficial allegations, there seems to be no foundation in the record before us for any age animus. Thus we believe the district court properly dismissed Nelson's age discrimination claim on summary judgment.
 
 
 19
 We again agree with the district court regarding Nelson's contract claim. The written agreement provides that Nelson was not a member of the staff of employees of Milwaukee Florist Exchange, Inc., but was rather its owner. As the company's owner during purchase negotiations, Nelson was the employer of the staff of employees the agreement references. The language cannot reasonably be read both ways, and offers Nelson no contractual expectation of employment beyond ten years.
 
 
 20
 Because we find that Nelson has failed to meet his burden of establishing a prima facie case of age discrimination, the district court's grant of summary judgment on both the ADEA and contract claims is hereby
 
 
 21
 Affirmed.
 
 
 22
 CUDAHY, Circuit Judge, concurring.
 
 
 23
 I agree with the result and the analysis with certain exceptions that I think are important.
 
 
 24
 In a reduction in force case, Oxman requires a plaintiff to show that "others not in the protected class were treated more favorably." 846 F.2d at 455 (emphasis in original). It seems to me that Nelson met this burden by showing that some younger workers kept their jobs. Therefore, Nelson has made and supported a prima facie showing of age discrimination. But Nelson loses anyway because he has not proffered any competent evidence to suggest that Kennicott's view of his sales-to-salary ratio (its non-discriminatory reason for the firing) was pretextual.