**Ronald J. DRANCHAK, Plaintiff,**

**v.**

**AKZO AMERICA, INC., Defendant.**

**No. 92 C 1295.**

United States District Court,
N.D. Illinois, E.D.

Feb. 16, 1993.

---

Martin K. Denis, Shayle P. Fox, Fox and Grove, Chartered, Chicago, IL, for plaintiff.

Paul E. Storkman, Arnstein & Lehr, P. Kevin Castel, Cahill, Gordon & Reindel, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff, Ronald J. Dranchak ("Dranchak") brings this action against defendant Akzo America, Inc. ("Akzo"), for breach of contract and for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and Employee Retirement and Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*. Akzo now seeks summary judgment on all counts of the first amended complaint.

### I. Summary Judgment Standard

■ Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Moreover, we must view the record and all possible inferences in the light most favorable to the non-moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Williams v. Williams Electronics, Inc.,* 856 F.2d 920, 922 (7th Cir.1988). Summary judgment should be denied "where there is reason to believe that the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### II. Factual Background

In April, 1988, Akzo Chemicals, Inc., Akzo's predecessor company, hired the 49–year old Dranchak as Director of Human Resources. By an agreement dated April 13, 1988, Akzo Chemical guaranteed Dranchak certain severance benefits, including a year's severance pay and other fringe benefits. These benefits, however, would not apply if Dranchak was fired for cause. In April, 1991, Dranchak became Vice President—Human Resources of Akzo. As Vice President, Dranchak was in charge of compensation packages for Akzo officers.

After beginning as vice president, Dranchak began discussing his own severance package with the company president, John C. Jadel ("Jadel"). The chairman and chief executive officer of the company, Richard C. Clarke ("Clarke"), was aware of the ongoing discussions.

On September 9, 1991, Clarke informed Jadel, a twenty year employee, that Jadel's position as Akzo's president was being terminated. Jadel Aff. at ¶ 2; Jadel Dep. at p. 185. The next day, September 10, Dranchak approached Jadel to discuss his (Dranchak's) severance benefits.[1] Dranchak told Jadel that he was considering quitting, if he did not receive a more favorable severance package. Wanting to retain Dranchak, who Jadel considered a valued employee, the outgoing president discussed severance benefits with Dranchak.

On September 11, 1991, having gone back and forth on possible packages, Jadel and Dranchak signed a document entitled "Retention Incentive," containing a severance agreement. The agreement entitled Dranchak, who had been with Akzo for 3½ years, to seven years of additional pension credit, the right to retire at 55 without financial disincentives, and 32 months of severance pay. By all accounts, this was a very favorable severance package. Moreover, as Dranchak understood it, the September 11–12 agreement allowed him to quit and still receive all of its benefits.

On September 12, 1991, Dranchak asked Jadel for an additional memo clarifying the benefits to which he was entitled under the September 11 agreement. Jadel complied, and sent Dranchak an explanatory memo,

---

1. In his affidavit, Jadel states that the same day he learned of his discharge, he went down the hall to Dranchak's office and told him about it. Dranchak denies having heard about the firing until Clarke told him four days later.

which the two men then signed. Both agreements provided that Dranchak would not receive any benefits if he was terminated for cause. Neither document explained what constituted "cause."

Later that day, Jadel gave a copy of Dranchak's agreements to Hans Arnoldy ("Arnoldy"), a member of the Supervisory Committee, of which Clarke was the chair. Jadel Dep. at pp. 168–170, 172. At the same time, Dranchak gave Robert McCarthy ("McCarthy"), Director of Special Projects and Expatriate Relations, a copy of the September 11 agreement.[2]

On September 13, 1991, Clarke called Dranchak long-distance, and told him about Jadel's termination. Clarke informed Dranchak that as Vice President, he would now report directly to Clarke. Clarke then asked Dranchak to meet with Jadel to determine what sort of severance agreement Jadel wanted and to work on the agreement with Peter Gold ("Gold"), General Counsel of Akzo. In the meeting between Clarke and Dranchak, Clarke never asked, and Dranchak did not volunteer, that Dranchak had recently negotiated a favorable severance package for himself with Jadel. Dranchak Dep. at pp. 222–23.

After meeting with Jadel, Dranchak reported back to Clarke that Jadel wanted a 36–month lump sum payment.[3] Upset at the amount, Clarke asked Dranchak wheth-er other people had received similar deals.[4] Id. Dranchak told him that a former employee named Ed Morrison had received more than Jadel was requesting, but did not refer to his own severance package.[5] Id. at 223.

Later, Dranchak met with Gold to discuss the agreement. Gold, too, raised the subject of whether anyone else had received a comparable severance package. Again, Dranchak did not mention his own agreement.[6] Ultimately, Clarke approved the 36–month lump sum payment, and signed Jadel's severance agreement on September 17, 1991.

Clarke states that he did not learn about Dranchak's agreements until he received an October 9, 1991 memo from Jadel, and that when he did, he believed that Dranchak had had a conflict of interest when he negotiated Jadel's severance agreement. In the months that followed, Clarke asked Dranchak to tear up the September 11–12 agreements. Dranchak refused, and at a meeting on January 28, 1992, Clarke informed Dranchak that he was being terminated. On January 31, 1992, Clarke sent Dranchak a letter explaining the decision. In the letter, Clarke indicated that Dranchak's termination was the result of his non-disclosure of the September 11–12 agreements and his refusal to rescind the agreements.[7]

---

**2.** Dranchak claims that Clarke, too, received copies of the September 11–12 agreements. He cites a sheet apparently handwritten by Jadel on February 12, 1992 after a phone conversation with Clarke (Jadel has no independent recollection of the conversation or of taking down notes, but he identified his handwriting). According to the sheet, Clarke asked Jadel why he had not gotten Clarke's approval for Dranchak's severance agreement. Jadel wrote that he thought Clarke would approve it, since he had approved Donohue's agreement. He also wrote that he "did not keep any agreements secret. Sent all to RMC [Clarke] in mid-September, including others not okayed by direct supervisor." Jadel Dep. at pp. 156–160. Clarke maintains that he was not aware of the agreements until October.

**3.** In his discussion with Jadel, Dranchak understood that his role was to protect Akzo's interests, not to act as a neutral arbiter. Dranchak Dep. at pp. 769, 771.

**4.** Dranchak maintains that by "similar deals," Clarke meant deals involving Akzo Chemical officers who, shortly after being promoted, lost their jobs due to restructuring. See Dranchak Dep. at pp. 214–215.

**5.** The defendants point out that when Dranchak was asked to name employees who had severance agreements comparable to his own, he mentioned Jadel's and Morrison's, among others. Dranchak Dep. at p. 262.

**6.** When asked why Gold referred to other deals, Dranchak replied that similar deals constituted past practices and precedents, and agreed that deals other employees had struck with Akzo were relevant to structuring Jadel's deal. Dranchak Dep. at pp. 224–25.

**7.** Dranchak asserts that the reasons articulated in the letter do not match the reasons cited during the January 28, 1992 meeting.

## III. Discussion

### A. *Count I—Breach of Contract*

In Count I of his first amended complaint, Dranchak alleges that Akzo breached its April 13, 1988, September 1, 1991, and September 12, 1991 agreements with him. Each of these agreements provides that Dranchak will not receive the described benefits if he is terminated for cause. Akzo contends that because Dranchak breached his fiduciary duty to the company, he was fired for cause and is not entitled to the disputed benefits. Dranchak, on the other hand, claims that he was fired because of his age and because Akzo wanted to deprive him of his severance and pension benefits. Akzo has moved for summary judgment on this count.

Summary judgment is only appropriate if there is no genuine issue of material fact that Akzo discharged Dranchak for cause—namely, for failing to disclose his own favorable severance agreement at the time he was negotiating Jadel's severance agreement as Akzo's representative. If Akzo did fire Dranchak for cause, then he is not entitled to his benefits under the agreements, and Akzo has not breached the agreements. However, a genuine issue of fact remains as to whether Akzo fired Dranchak for cause.[8]

Dranchak asserts that Clarke knew about the September 11–12 agreements at the time he asked Dranchak to negotiate Jadel's agreement, and, therefore, (1) there was no breach of fiduciary duty, and (2) Clarke's decision to fire Dranchak did not stem from any lack of disclosure. Dranchak points out that Clarke has admitted that he knew Dranchak and Jadel had been discussing Dranchak's severance package since the spring. Dranchak also offers evidence that Arnoldy, a member of the Supervisory Committee that Clarke chaired, received a copy of the September 11–12 agreements on September 12, 1991, and evidence that Jadel had sent a copy of Dranchak's agreement to Clarke in mid-September. While none of this evidence conclusively establishes that Clarke knew about Dranchak's September agreements at the time he assigned him to negotiate with Jadel, it permits a reasonable inference that Clarke knew about the agreements at the relevant time. This, in turn, allows the inference that Akzo's stated reason for firing Dranchak is mere pretext and, accordingly, that Akzo fired Dranchak because of his age.[9] *See Visser v. Packer Engineering Assoc., Inc.*, 924 F.2d 655, 657 ("If the employer offers a pretext—a phony reason—for why it fired the employee, then the trier of fact is permitted, although not compelled, to infer that the real reason was age.").

Second, Dranchak asserts that he was really fired because of his age. Dranchak swears that in the January 28, 1992 meeting, Clarke said: "I know how you feel. I was fired once because of age myself. I was fired once for being too old." Dranchak Dep. at pp. 433–34, 510–11. Although Akzo challenges this evidence, and offers, among other things, the January 31, 1992 letter, in which Clarke states clearly that Dranchak was being terminated because of his behavior surrounding the September 11–12 agreements, a reasonable trier of fact could find that Dranchak was dismissed because of his age.

Finally, several undisputed facts permit the inference that Dranchak was not fired for cause. For example, both parties agree that Clarke asked Dranchak to tear up the September 11–12 agreements. While Clarke explains that he did so in order to give Dranchak an opportunity to acknowledge that he had behaved badly and to set things right, a reasonable juror could conclude that Clarke simply wanted to avoid a very generous severance package.

Because there are disputed issues of material fact about whether Dranchak was

---

8. Because of our ruling, we need not address plaintiff's assertion that Akzo has failed to provide certain benefits due and owing to Dranchak even if he had been fired for cause.

9. Although it is certainly possible that Clarke may have known about the agreements, and still considered Dranchak's failure to personally disclose them to be a breach of his fiduciary duties to the company, Akzo has not made such an assertion.

fired for cause, we deny summary judgment on Count 1.[10]

### B. *Count II—ERISA*

■ In Count II of its first amended complaint, Dranchak alleges that Akzo violated § 510 of ERISA by intentionally terminating Dranchak to interfere with his right to receive benefits under the employee welfare benefit and pension plans, and that he has been deprived of employee welfare and pension benefits to which he is entitled. § 510 of ERISA, 29 U.S.C. § 1140. Akzo contends that it fired Dranchak for the nonviolative reason that Dranchak breached his fiduciary duties to the company.

ERISA § 510 provides that

[i]t shall be unlawful for any person to discharge ... or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ..., or for the purpose of interfering with the attainment of any right to which such participant may become entitled....

29 U.S.C. § 1140. In order to recover under § 510, then, a plaintiff must show that his employer intended to interfere with his right to receive benefits. Where, as here, the employer has asserted legitimate grounds for plaintiff's discharge, the plaintiff must show that the employer's stated reasons are merely pretextual. *See Valenzuela v. Signode Corp.*, Docket No. 88 C 3301, 1989 WL 88290 (N.D.Ill. July 27, 1989) (in order to recover under § 510, plaintiff "must show that the reasons given for his termination were pretextual and that the true purpose of the discharge was to deprive him of impending benefits, or to retaliate against him for exercising his right to benefits."). If plaintiff is unable to establish pretext, then he cannot recover under § 510.

As discussed above, Dranchak has put forth enough evidence to create a triable

issue of fact as to whether Akzo fired Dranchak for cause. Accordingly, we deny summary judgment.

### C. *Count III—ADEA*

In Count III, Dranchak alleges that Akzo violated the ADEA by discharging him because of his age and by retaliating against him for opposing Akzo's allegedly illegal employment practices. Akzo denies these allegations, and again maintains that it fired Dranchak for breaching his fiduciary duties to the company. Akzo further asserts that its alleged "retaliatory" actions were the result of Dranchak's misbehavior, not his filing of ADEA claims. Once again, then, Akzo's motion for summary judgment turns upon whether there is a genuine issue of fact regarding Akzo's reasons for terminating Dranchak.

■ To recover under the ADEA, a plaintiff must establish that age was "a 'determining' factor, in that plaintiff would not have been discharged *but for* his age." *Grohs v. Gold Bond Building Products*, 859 F.2d 1283, 1285 (7th Cir.1988) (emphasis in the original). *See also Visser v. Packer Engineering Assoc., Inc.*, 924 F.2d 655, 658 (7th Cir.1991) (en banc). To demonstrate that he was discharged because of his age, a plaintiff may use direct evidence of discrimination, or follow the burden-shifting scheme outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Here, plaintiff has offered sufficient direct and circumstantial evidence of age discrimination to survive summary judgment. First, Dranchak swears that Clarke commiserated with him about being fired because of his age. Based on this direct evidence, a trier of fact could conclude that Akzo discharged Dranchak because of his age.

■ Additionally, Dranchak has offered circumstantial evidence under the burden-

---

**10.** Dranchak also offers evidence that other employees whose judgment was questioned were treated differently than he was, *i.e.*, that they were given warnings and reviews, but were not discharged. Furthermore, he alleges that there was a general age-consciousness at Akzo, as demonstrated by, *inter alia*, a Tiger Plan for up-and-coming executives of a certain age. Because we find the foregoing factual disputes sufficient to deny summary judgment, we need not discuss these issues.

shifting approach. Under *McDonnell Douglas'* burden-shifting, a plaintiff must first establish a *prima facie* case of age discrimination. Once he has done so, the burden shifts to the employer to set forth a legitimate, nondiscriminatory reason for the discharge. If the employer meets this burden, then the burden returns to the plaintiff, who now must prove that the employer's stated reason for the discharge is merely a pretext for a discriminatory motive.

Here, plaintiff has made a *prima facie* showing of discrimination. He was 53 when he was fired, he was meeting his employer's legitimate job expectations, as evidenced, among other things, by Jadel's desire to retain him as a valued employee, he was fired, and he was replaced by a man in his thirties. *See Kier v. Commercial Union Insurance Co.*, 808 F.2d 1254, 1257 (7th Cir.), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 528 (1987) (elements of a *prima facie* showing include (1) being a member of protected class, (2) meeting employer's legitimate job expectations, (3) being fired, and (4) being replaced.) For its part, Akzo has articulated a legitimate, nondiscriminatory reason for Dranchak's discharge—namely, his alleged breach of fiduciary duties. The burden, then, is on Dranchak to prove that Akzo's stated reason for firing Dranchak is merely pretext. There are, however, genuine issues of material fact regarding Akzo's reasons for terminating Dranchak.

As discussed above, Dranchak has sworn under oath that in his January 28, 1992 meeting with Clarke, Clarke stated that he, too, had been fired because of his age. Moreover, there is evidence from which a juror could infer that Clarke knew about the agreements in mid-September. Accordingly, a reasonable trier of fact could find that Clarke did not recommend Dranchak's discharge because he failed to disclose the agreements. Accordingly, we deny Akzo's motion for summary judgment on the ADEA claim.

D. *Akzo's "After–Acquired" Knowledge*

Finally, Akzo argues that summary judgment is warranted because it has "af-

ter-acquired" knowledge which would have sustained its decision to fire Dranchak. In this circuit, if an employer discovers misconduct that would have caused it to fire the employee even in the absence of discrimination, an employee is barred from recovery. *See Washington v. Lake County*, 969 F.2d 250, 254 (7th Cir.1992). Akzo claims that Dranchak lied on his resume and violated his confidentiality agreement with the company by removing confidential documents.

Even if Akzo's allegations are true—and there appears to be a genuine controversy regarding Dranchak's alleged resume fraud—Akzo must establish that it *would* have fired Dranchak for his misconduct, not merely that it *could* have fired him. *See Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1298 (7th Cir.1992). Critically, however, Akzo has offered no affirmative evidence that it would have fired Dranchak for his alleged misconduct. Accordingly, we deny Akzo's motion for summary judgment on the basis of after-acquired knowledge.

IV. Conclusion

For the foregoing reasons, we deny defendant's motion for summary judgment. It is so ordered.